IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DENNIS LEROY GORDON,                           Case No. 2:13-cv-00052-HU

        Petitioner,                  FINDINGS AND RECOMMENDATION

   v.

STEVEN FRANKE, Superintendent,
Two Rivers Correctional
Institution,

       Respondent.


ANTHONY D. BORNSTEIN
Federal Public Defender's Office
101 SW Main Street, Suite 1700
Portland, OR 97204

    Attorney for Petitioner

ELLEN F. ROSENBLUM
Attorney General
KRISTEN E. BOYD
Assistant Attorney General
Department of Justice
1162 Court Street N.E.
Salem, OR 97301-4096

    Attorneys for Respondent

HUBEL, Magistrate Judge

1 -- FINDINGS AND RECOMMENDATION

Petitioner, currently an inmate at the Oregon State Penitentiary, brings this habeas corpus proceeding pursuant to 28 U.S.C. § 2254. For the reasons set forth below, his petition should be denied.

<u>**BACKGROUND**</u>

In 1975, petitioner stabbed and decapitated a woman in front of her two small children, after having raped the same woman at gunpoint in her home a month earlier. *See Gordon v. Bd. of Parole and Post-Prison Superv.*, 343 Or. 618, 620, 175 P.3d 461 (2007); *Gordon v. Bd. of Parole and Post-Prison Superv.*, 246 Or. App. 600, 602-03, 267 P.3d 188 (2011). In 1976, petitioner pled guilty to Murder and Rape in the First Degree. He was sentenced to life imprisonment, and a consecutive 20-year sentence. Resp. Exh. 101.

I.   <u>**Relevant Parole Rules**</u>

In order to resolve the issues raised in the instant proceeding, it is necessary to review the relevant state law governing petitioner's parole eligibility, as well as the decisions rendered by the Oregon Board of Parole and Post-Prison Supervision ("board") throughout his confinement.

On the date petitioner committed his crimes, Oregon's sentencing scheme was known as the discretionary system. Under that system, each inmate served an indeterminate sentence, and the board periodically considered whether the inmate was suitable for release on parole. *Gordon*, 343 Or. at 620. In 1977, the state

legislature replaced the discretionary system with a matrix system. *Id.* at 621. Under the matrix system, most inmates receive a firm parole release date (which may be postponed in limited circumstances). *See Id.* at 621-22. For those offenders who committed their crimes before adoption of the matrix system, the board permits an inmate to opt into the matrix system, and the inmate's eligibility for parole is determined using the statute and rules in effect at the time of the election. *Id.* at 622-23.

At all relevant times, ORS 144.125(3) governed the board's discretion in deferring a parole release date. In 1984 and 1988, the statute provided that "[i]f a psychiatric or psychological diagnosis of present severe emotional disturbance such as to constitute a danger to the health or safety of the community has been made . . . , the board may order the postponement of the scheduled release date." 1981 Oregon Laws, c. 426, § 2; 1987 Oregon Laws, c. 320 § 53; *see also Gordon*, 343 Or. at 627 n.7.

In *Weidner v. Armenakis*, the Oregon Court of Appeals held that under ORS 144.125(3), when considering whether a prisoner suffers from a severe emotional disturbance, the board may consider *all relevant information in the record*. 154 Or. App. 12, 17-18, 959 P.2d 623 (1998), *withdrawn by order* July 13, 1998, *reasoning reaffirmed and readopted in Merrill v. Johnson*, 155 Or. App. 295, 964 P.2d 284 (1998); *Gordon*, 343 Or. at 627.

However, in *Peek v. Thompson*, the Court of Appeals addressed the impact of the 1988 revision to Oregon Administrative Rule 255-60-006.  The court concluded that the 1988 revision to OAR 255-60-006 requires a formal finding *in the psychiatric or psychological evaluation itself* as a prerequisite to the Board's authority to extend a prisoner's parole release date. 160 Or. App. 260, 264-66, 980 P.2d 178 (1999); *Gordon*, 343 Or. at 628-29**.**  In sum, if the board applies the 1988 version of OAR 255-60-006, it must rely solely on the psychiatric or psychological report in the record to determine whether an inmate has a severe emotional disturbance. However, if the board applies the 1984 version, it may rely on the entire record.  *Gordon*, 246 Or. App. at 606; *Gordon v. Bd. of Parole and Post-Prison Superv.*, 2014 WL 5362040, *2 (Oct. 22, 2014).

## II.  <u>Petitioner's Parole Board History</u>

- **1984 (first matrix election)**

On August 1, 1984, petitioner signed an application to receive a firm parole release date under the matrix system, rather than remain under the discretionary system. Resp. Exh. 102 at 90.  On that same date, the board held a Personal Review Hearing and, on August 10, 1984, issued a Board Action Form ("BAF") setting petitioner's matrix range at 198 to 268 months, and a projected parole release date of March 15, 2000. *Id.* at 91.

Petitioner appealed the August 10, 1984, board action.  In the process of preparing the transcript for appeal, it was discovered that the August hearing had not been recorded.  *Id.* at 92.  As a result, on November 8, 1984, the board "voided" the August 10, 1984 BAF and referred the matter to an "analyst for recomputation of [petitioner's] History/Risk score" (a matrix calculation).  *Id.* at 95; *Gordon*, 343 Or. at 623.

- **1985 (discretionary system election)**

On May 15, 1985, petitioner appeared at a parole hearing and signed an application requesting that he be considered for parole under the discretionary system in effect at the time of his crimes.  Resp. Exh. 102 at 98.  During a discussion with petitioner, one board member agreed with petitioner's assertion that his 1984 election was invalid because the board action had been voided.  *See Gordon*, 343 Or. at 624.  The board's BAF reflects petitioner's election as follows: "Inmate Gordon signed application for purposes of *remaining* under the Discretionary System."  Resp. Exh. 102 at 99 (emphasis added).  The board continued to consider petitioner under the discretionary system through 1987.  *Id.* at 101-09; *Gordon*, 343 Or. at 624.

- **1988 (second matrix election)**

On August 27, 1988, petitioner signed an application requesting that he "be *set back* under the matrix [system] as [he] was in August of 1984."  Resp. Exh. 102 at 113-14 (*emphasis added*).

Pursuant to that request, an administrative review hearing was conducted. The board established a 212-284 month matrix range, and a parole release date of March 15, 2000 (which was later reduced by 7 months). *Id.* at 116 & 120-21 (BAF #2 & #4). The board held additional parole hearings in 1991 and 1994, resulting in no change to petitioner's parole release date. *Id.* at 124-29 (BAF #6 & #7).

- **BAF #8**

On February 2, 1999, petitioner's parole release date was deferred 24 months on the basis that petitioner suffered from a present severe emotional disturbance such as to constitute a danger to the health and safety of the community. *See Id.* at 130-37 (BAF #8 & Administrative Review Responses (ARR) #2 & #3). Petitioner's projected parole release date was set for August 15, 2001. In ARR #3, the Board states that "it is the board's policy for discretionary inmates who opt into the matrix system to apply the rules in effect at the time the inmate opts into the matrix system," noting that petitioner opted into the matrix system on *August 27, 1988. Id.* at 136.

However, on June 2, 2003, the board reopened the matter on its own motion, and corrected ARR #3 to reflect that petitioner made his first matrix election on *August 10, 1984. Id.* at 150-51 (ARR #5). The Oregon Supreme Court reversed the board, and remanded to require the board to provide an explanation for departing from its

prior practice of relying on petitioner's 1988 election. *Gordon*, 343 Or. at 635-38.

- **BAF #14**

On remand, the board held that it relied upon petitioner's 1984 matrix election, rather than the later 1988 election, in order to avoid the limitations *Peek* placed on the board's discretion. Resp. Exh. 102 at 495-97. The board explained that "prior to Peek, there was little reason for the Board to . . . formulat[e] a practice for when offenders opt into the matrix, opt out of the matrix, and then attempt to opt into the matrix again." *Id.* at 497. The board relied upon petitioner's 1984 election "to avoid unduly limiting the information before the Board when it made its release decision." *Id.* Additionally, the board held that, under the applicable law in 1984 or 1988, petitioner's parole was properly deferred 24 months. *Id.* at 498-99.

The Oregon Court of Appeals affirmed the board's decision, concluding that petitioner's parole release date was properly deferred under either version of the rule. The Oregon Supreme Court denied review. *Gordon v. Bd. of Parole and Post-Prison Superv.*, 246 Or. App. 600, 612-13, 267 P.3d 188 (2011), *rev. denied*, 352 Or. 341 (2012).

- **BAF #12 & #15**

In the interim, on March 16, 2005, the board deferred petitioner's parole release date, concluding that the *Peek* decision

was inapplicable because petitioner first opted into the matrix system in 1984. Resp. Exh. 102 at 439-41 & 485-88 (BAF #12 & ARR #8). The Oregon Court of Appeals reversed, and remanded to the board for consideration of the Oregon Supreme Court's decision in *Gordon v. Bd. of Parole*, 343 Or. 618, 175 P.3d 461 (2007). *Gordon v. Bd. of Parole and Post-Prison Superv.*, 218 Or. App. 374, 179 P.3d 750 (2008).

On remand, the board issued BAF #15, which provides as follows:

> In light of its conclusion in BAF #14 that the 1984 rules apply to offender, the Board further reaffirms its finding in BAF #14 that, as of March 16, 2005, and applying the rules in effect at the time offender opted into the matrix system in 1984, offender suffers from a present severe emotional disturbance that constitutes a danger to the health or safety of the community.

> In addition, the Board further finds that, even if it were to apply the 1988 rules, as those rules were construed by the Oregon Court [of] Appeals in Peek, Dr. McGuffin's psychological evaluation contains a finding that offender suffers from a present severe emotional disturbance that constitutes a danger to the health or safety of the community.

Resp. Exh. 102 at 502 & 530-31 (ARR #12). The Oregon Court of Appeals affirmed, without opinion, and the Oregon Supreme Court denied review. *Gordon v. Bd. of Parole and Post-Prison Superv.*, 250 Or. App. 396, 282 P.3d 30, *rev. denied*, 352 Or. 600 (2012).

## **STANDARDS**

A petition for writ of habeas corpus, filed by a state prisoner, shall not be granted with respect to any claim that was

adjudicated on the merits in state court unless the adjudication resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law"; or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(1) & (2); *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011). The petitioner carries the burden of proof. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

A state court decision involves an unreasonable application of clearly established federal law if it correctly identifies the governing legal standard, but unreasonably applies it to the facts of the prisoner's case. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Himes v. Thompson*, 336 F.3d 848, 852 (9th Cir. 2003). An unreasonable application of federal law is different from an incorrect application. *Harrington*, 131 S.Ct. at 785; *White v. Woodall*, 134 S.Ct. 1697, 1702 (2014). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 131 S.Ct. at 786-87 (*quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *White*, 134 S.Ct. at 1706-07; *Burt v. Titlow*, 134 S.Ct. 10, 16 (2013). Where, as here, the state courts supplied no reasoned decision, this court performs an independent review of the record. *Himes*, 336 F.3d at 853.

## **DISCUSSION**

Petitioner raises three grounds for relief challenging the board's decision in BAF #15 and ARR #12, deferring petitioner's parole release date for 24 months. Petitioner contends that the board's application of the 1984 board rule, rather than the 1988 revision, violates his right to due process and access to the courts. In his supporting brief, petitioner states that grounds for relief one, two, and three "are essentially the same ground for relief," and that the "discrete claim of denial of access" will not be addressed in his brief. Pet.'s Brief in Support at 2 & n.1.

Because petitioner fails to advance the merits of his access to the courts claim, he has failed to sustain his burden to prove habeas relief is warranted. *See Cullen*, 131 S.Ct. at 1398 (petitioner bears burden to prove he is entitled to habeas relief). Nevertheless, I have reviewed petitioner's access claim (*see* Petition at 7-8) and conclude that it does not entitle petitioner to relief.

With regard to his due process claims, petitioner argues that the state courts violated clearly established federal law interpreting the Due Process Clause. Pet.'s Brief in Support at 10 (citing 28 U.S.C. § 2254(d)(1)). Petitioner explains:

> [T]he Board violated due process by acting contrary
> to settled state law which restricted consideration of
> materials and information beyond the psychological report
> to make the findings necessary to deny an inmate's
> release on parole. Moreover, the record before the Board

did not support the legal standard necessary to deny his
release on parole.

* * * * *

The relevant Oregon statute required that the Oregon
Board of Parole release a prisoner on his projected
release date unless one of three statutory exceptions
applied.  The relevant statutory exception allowed the
Board to defer an inmate's release if the inmate suffered
from a present severe emotional disturbance such as to
constitute a danger to the health or safety of the
community.

* * * * *

The version of OAR 255-60-006(8) (1988) in effect at
the time stated that "*If the evaluation does not make a
finding* of severe emotional disturbance, such as to
constitute a danger to the health [or] safety of the
community *the Board shall affirm the parole release
date*."

* * * * *

[T]his Court [should] reject the Board's attempt to
utilize broader authority in Mr. Gordon's case that was
held squarely not to be theirs.  *To hold to the contrary
is a violation of due process.  Cf. Bouie v. City of
Columbia, 378 U.S. 347 (1964) (unforeseeable judicial
enlargement of criminal statute violates due process when
applied retroactively).*

As Mr. Gordon was left under the discretionary
system at the hearing held in May 15, 1985, the 1984
rules did not apply to him.  The only valid placement
into the Matrix system was in August 1988.

* * * * *

In light of this history, the Board was compelled to
review Mr. Gordon's case under the 1988 administrative
rules as enunciated in the *Peek* case.  When considered
under that rule, the psychological report did not sustain
the finding of a Present Severe Emotional Disturbance. *
* * * The psychological report, when considered as the
exclusive basis for the Board's decision, cannot, on its

own, support or meet the requisite standard necessary to
deny Mr. Gordon's parole.

Pet.'s Brief in Support at 2-8 (*internal citations omitted,
emphasis added*).

Petitioner argues that the board's reliance upon the 1984
board rule was arbitrary and/or unforeseeable because (1) the board
argued in BAF #15, and on appeal therefrom, that *Peek* was wrongly
decided; (2) the board acknowledged that petitioner's 1984 election
was not valid; (3) the board had consistently applied the 1988
rules to petitioner's case; and (4) the record did not support the
deferral of petitioner's parole release date under the applicable
1988 rule.    *Id.* at 8-9.

The violation of state law is not grounds for federal habeas
relief.  *Swarthout v. Cooke*, 131 S.Ct. 859, 861 (2011); *Roberts v.
Hartley*, 640 F.3d 1042, 1046 (9th Cir. 2011); 28 U.S.C. § 2254(a).
It "is no part of [this court's] business" to evaluate the state
board of parole's application of its rules for determining parole
eligibility.  *Cooke*, 131 S. Ct. at 863; *Roberts*, 640 F.3d at 1047.
Accordingly, to the extent that petitioner is simply challenging
the board's action on the basis that it is contrary to OAR 255-60-
006 (1988), and/or the Court of Appeals decision in *Peek*, habeas
relief is not warranted.

Moreover, the federal due process protections in the parole
context "are minimal."  *Cooke*, 131 S.Ct. 862.  Assuming a liberty

interest in parole exists under ORS 144.125 (1981),[1] due process is satisfied if the inmate receives an opportunity to be heard and is provided a statement of the reasons parole was denied.  *Id.*; *Roberts*, 640 F.3d at 1046.  The question on habeas review is not whether the state court correctly decided the case, "[b]ecause the *only federal right at issue is procedural*." *Cooke*, 131 S.Ct. at 862 (emphasis added); *Miller v. Oregon Bd. of Parole and Post-Prison Superv.*, 642 F.3d 711, 716 (9th Cir. 2011).

Petitioner has made no argument or showing that he was denied the procedural protections outlined in *Cooke*.   Petitioner's assertion that the board's decision to apply the pre-1988 version of OAR 255-60-006 was "arbitrary" is a substantive challenge of the board's decision foreclosed by *Cooke*.  *Miller*, 642 F.3d at 716-17; *but see Castro v. Terhune*, 712 F.3d 1304, 1314 n. 4 (9th Cir. 2013) (prison officials' validation of inmates as gang affiliates must be supported by "some evidence"); *Branham v. Davison*, 433 Fed.Appx. 491, 492 (9th Cir. May 20, 2011) ("even after *Cooke* the Due Process Clause must still protect parole applicants against truly arbitrary determinations to deny parole-such as those based on random factors unrelated to the applicant's own record").

---

[1] *See Miller v. Or. Bd. of Parole and Post-Prison Superv.*, 642 F.3d 711, 714-16 (9th Cir. 2011) (state parole statute establishes protected liberty interest when it uses language that creates a presumption of parole if certain conditions are satisfied).

Assuming that the Due Process Clause prohibits the arbitrary application of state parole rules, the board's decision to utilize the pre-1988 version of OAR 255-60-006, in light of *petitioner's* August 1, 1984, election into the matrix system, is supported by "some evidence" and is not arbitrary.  The board explained that its previous reliance on petitioner's 1988 election was because, prior to the *Peek* decision, there was no reason to formulate a practice for determining when an offender *first* opts into the matrix system. It chose to rely upon petitioner's 1984 election because it permitted the board to consider the most information possible for making its decision.

Further, the fact that the board voided its August 10, 1984, order, did not necessarily void petitioner's 1984 election to proceed under the matrix system.  The statement by an individual board member that petitioner's 1984 election was invalid is not tantamount to a decision of the full board.  For all of these reasons, the board's determination that petitioner elected into the matrix system in 1984 was supported by some evidence and was not arbitrary.

To the extent that petitioner argues that the board's decision was an unforeseeable "attempt to utilize broader authority . . . that was held squarely not to be theirs" in violation of *Bouie v. City of Columbia*, 378 U.S. 347 (1964), the claims fail because *Bouie* has not been extended to "after-the-fact increases in

14 -- FINDINGS AND RECOMMENDATION

punishment." *Holgerson v. Knowles*, 309 F.3d 1200, 1202-03 (9th Cir. 2002). Indeed, the Supreme Court has more recently explained that its decision in *Bouie* was premised upon the right to *fair warning of criminal laws*:

> Our decision in *Bouie* was rooted firmly in well established notions of due process. Its rationale rested on core due process concepts of notice, foreseeability and, in particular, the right to fair warning as those concepts bear on the constitutionality of attaching criminal penalties to what previously had been innocent conduct.

*Rogers v. Tennessee*, 532 U.S. 451, 459 (2001) (citations omitted). Accordingly, the board's decision was not contrary to, or an unreasonable application of the fair-notice requirement set forth in *Bouie*.

In sum, petitioner has failed to demonstrate that he was denied due process in his 2009 parole review hearing. The state courts' rejection of his due process claim is neither contrary to, nor an unreasonable application of, clearly established federal law. Accordingly, habeas relief should be denied.

<u>**CONCLUSION**</u>

Based on the foregoing, petitioner's habeas petition (#3) should be denied. Because petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability should be DENIED. *See* 28 U.S.C. § 2253(c)(2).

///

///

15 -- FINDINGS AND RECOMMENDATION

**SCHEDULING ORDER**

The Findings and Recommendation will be referred to a district judge.  Objections, if any, are due December 19, 2014.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due January 5, 2015.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 1st day of December, 2014.


/s/ DENNIS J. HUBEL

Dennis J. Hubel
United States Magistrate Judge